# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

REBECCA JANE KIMBALL,

                              Plaintiff,

   v.                                                    6:14-CV-698 (LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

STEVEN R. DOLSON, ESQ., for Plaintiff
PETER W. JEWETT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On August 24, 2011, plaintiff filed applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, alleging disability beginning June 27, 2009. (Administrative Transcript ("T") at 10, 185). The applications were denied initially on February 10, 2012. (T. 60-69). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on December 11, 2012. (T. 24-59). On January 29, 2013, ALJ Gregory M. Hamel found plaintiff was not disabled. (T. 7-23). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 18, 2014. (T. 1–4).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the

residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id*.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record

3

contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

Plaintiff is a 42 year old woman who lives with her two children, ages 13 and 8, and her boyfriend.[1] (T. 29, 32). Plaintiff has a general equivalency degree. (T. 29). Plaintiff's last employment was as an assembler at a facility that manufactured foggers and other insecticide sprayers. (T. 30). This assembly work varied from small items that required the use of tweezers to larger products that were assembled by hand. (T. 51). Plaintiff testified that none of the products being assembled weighed more than twenty pounds. (*Id*.). Plaintiff stated that she left this job in February 2008 due to complications from diabetes, which caused her to repeatedly miss work. (T. 30, 273). She has not worked since that time.[2] (T. 209).

---

[1] At the time of the hearing in December of 2012, plaintiff was 40, and her children were 11 and 6. (T. 32).

[2] Plaintiff had a prior application for benefits denied by an ALJ. The onset date of June 29, 2009 in this proceeding corresponds to the day after the date of the previous ALJ decision. (T. 30-31, 203).

In addition to her diabetes treatment, plaintiff was treated and was prescribed medication for a number of physical impairments, including high cholesterol, high blood pressure, fibromyalgia, back pain, and neuropathy. (T. 429). During the ALJ hearing, plaintiff testified to numbness in her hands, feet and legs, and pain which made it difficult to walk, stand, grip, and lift. (T. 33-34). At the time of the hearing, plaintiff had a history of medication non-compliance, and had quit prescribed physical therapy after three sessions because she felt it did not make her any better. (T. 16, 309, 311, 489).

Plaintiff was also diagnosed with unspecified paranoid schizophrenia and schizoaffective disorder[3], and she had been taking Zoloft, an anti-depressant, for three months prior to the hearing. (T. 39, 442, 478-485). She testified that she had been hearing voices, and that she was going to be referred to a psychiatrist. (T. 46, 485). At the time of the hearing, plaintiff had never had any psychiatric hospitalization or counseling. (T. 46-48, 483).

Plaintiff testified that she could generally care for herself – sometimes with pain – and that she provided care for her children, including housekeeping, meal preparation, laundry and shopping. (T. 35). Plaintiff's sister often came over to help. (*Id*.). Plaintiff was able to drive, but testified that she only did so about twice a week due to frequent numbness in her hands, which made it difficult to control the car. (T. 37-38). She generally socialized with her family, including weekly outings with her

---

[3] Schizoaffective disorder is a condition in which a person experiences a combination of schizophrenia symptoms and mood disorder symptoms. http://www.mayoclinic.org/diseases-conditions/schizoaffective-disorder/basics/definition/con-20029221

mother, and chatted with neighborhood children from her front porch. (T. 36. 41).

Further details regarding the medical and other evidence, including the medical opinion evidence, are discussed below as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

The ALJ determined that plaintiff met her insured status through September 30, 2010, and that plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 27, 2009. The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: diabetes mellitus with neuropathy; fibromyalgia; hypertension; hyperlipidemia; and mental disorders diagnosed as schizoaffective disorder and paranoid schizophrenia. (T. 12). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P., including Listing 12.04. (T. 13-14).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform light work, except that plaintiff could only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. (T. 14). The ALJ found that plaintiff could not climb ladders and similar devices. (*Id.*) Plaintiff was able to frequently, but not constantly, do tasks requiring handling, reaching, and fingering. The ALJ determined that plaintiff could do routine and repetitive tasks only, and that she could not do tasks requiring more than occasional public contact and interaction. (*Id.*).

In making the RFC determination, the ALJ stated that he considered all of the

plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (*Id.*). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.929 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*). In doing so, the ALJ assigned significant weight to the opinions of consultative medical examiner Dr. Kalyani Ganesh, and consultative psychiatric examiner, Michael Alexander, Ph.D. (T. 17).

Dr. Ganesh opined that plaintiff had no gross physical limitation in sitting, standing, walking, or use of the upper extremities. (T. 17, 432). Dr. Ganesh found that plaintiff's movements were "very brisk," and that she could do a full squat, had a normal stance, and exhibited full strength in the upper and lower extremities. (T. 17, 431-32). Dr. Ganesh noted plaintiff's wide range of daily activities, and described plaintiff's effort during the examination as "poor." (T. 431).

Dr. Alexander conducted a psychiatric exam of plaintiff and opined that she could follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks. (T.17, 441). He concluded that plaintiff may have difficulty performing some complex tasks independently due to her medical conditions, rather than her mental conditions. Dr. Alexander also concluded that plaintiff could make appropriate decisions, relate adequately to others, and appropriately deal with stress, and that plaintiff's mental impairments were not significant enough to interfere with her daily functioning. (*Id.*).

7

The ALJ also considered the opinion of the state psychiatric consultant, Dr. D. Mangold, who concluded that plaintiff appeared to be mentally capable of performing "simple competitive work" and described plaintiff's limitations as "not significant" or "moderate." (T. 17, 443-474). The ALJ assigned this opinion significant weight because it was consistent with the record as a whole. (T. 17).

After considering the evidence and plaintiff's testimony, the ALJ found that plaintiff was not fully credible with respect to the intensity, persistence, and limiting effects of her symptoms. (T. 15). In making the credibility determination, the ALJ considered the plaintiff's testimony in addition to the medical evidence. (T. 15-18).

At step four, the ALJ also determined that plaintiff's RFC would prevent her from performing her past relevant work. (T. 18). At step five, the ALJ relied upon the testimony of a vocational expert to conclude that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and determined that plaintiff was not disabled, based upon her age, education, and prior work experience. (T. 19).

V. **ISSUES IN CONTENTION**

Plaintiff raises the following argument:

1. The ALJ failed to assess all severe impairments and include the true limiting effect of those impairments in the RFC determination, resulting in an RFC evaluation that is not supported by substantial evidence. (Pl.'s Br. at 3-5) (Dkt. No. 12).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 3-7) (Dkt. No. 14). For the following reasons, this court agrees with the defendant and will recommend dismissing

the complaint.

# DISCUSSION

## VI. SEVERE IMPAIRMENT

### A. Legal Standard

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep't.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10

(W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

10

B.  **Application**

The ALJ found that plaintiff had four severe physical impairments: diabetes mellitus with neuropathy; fibromyalgia; hypertension; and hyperlipidemia. (T. 12). The ALJ also found two severe mental impairments: schizoaffective disorder and paranoid schizophrenia. (*Id.*). Plaintiff argues that the ALJ erred by not finding that spondylolysis of the lumbar spine[4] and right rotator cuff tendonitis, each mentioned in plaintiff's medical records, also constituted severe impairments. (Pl.'s Br. at 3-5).

In support of this argument, plaintiff cites to March 27, 2009 medical imaging results which depicted spondylolysis and osteoarthritic changes in the lumbar spine. (T. 333). Plaintiff also cites treatment notes that include a diagnosis of right rotator cuff tendonitis, and described a decreased range of motion in plaintiff's right shoulder. (T. 294). Plaintiff also relies upon a surface EMG study that showed her right upper trapezius musculature "exhibited hyperactive muscle contraction rate." (T. 280). Plaintiff did not provide a Medical Source Statement from a treating physician. (T. 17).

In his decision, the ALJ acknowledged the diagnoses of right rotator cuff tendonitis and back pain. In addition, as will be discussed below, the ALJ analyzed the same medical imaging and treatment notes now relied upon by plaintiff, along with subsequent musculoskeletal examinations and Dr. Ganesh's consultative physical examination as part of his RFC assessment. (T. 16). Because the ALJ considered the impairments as part of his RFC analysis and did not deny plaintiff's claim at Step 2 of

---

[4] Spondylolysis is a defect in the connection between vertebrae that can lead to small stress fractures that can cause vertebrae to slip out of place, a condition called spondylolisthesis. http://my.clevelandclinic.org/health/diseases_ conditions/ hic_ your _back_ and_ neck/ hic _ Spondylolysis

11

the sequential analysis, this court finds that any error by the ALJ in not finding plaintiff's spondylolysis and right rotator cuff tendonitis to be severe was harmless.

## VII. RFC

### A. Legal Standards

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-

medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

B. **Application**

The ALJ found that plaintiff could perform light work except that plaintiff could only occasionally climb stairs, balance, stoop, kneel, crouch and crawl; could not climb ladders and similar devices; and could frequently do tasks requiring handling, reaching, and fingering. (T. 14). The ALJ also concluded that plaintiff was limited to routine and repetitive tasks only, and that she could not do tasks requiring more than occasional public contact and interaction. (*Id*.). Plaintiff argues that, in making this finding, the ALJ failed to properly weigh the medical evidence associated with plaintiff's diagnosed spondylolysis and right rotator cuff tendonitis. (Pl.'s Br. at 4-5). This court does not agree.

Plaintiff cites medical imaging results, plaintiff's documented complaints of lower back pain and associated numbness and tingling in her legs, and a September 15, 2009 positive straight leg raise test[5] as proof of the limitations imposed by plaintiff's spondylolysis. (Pl.'s Br. at 4). However, the ALJ considered each of these issues in his RFC assessment. While not specifically referencing spondylolysis, the ALJ spent a significant portion of his decision discussing patient's back pain, numbness and alleged mobility impairments. (T. 16-18). For example, the ALJ noted the September 2009 positive straight leg raise, but found that subsequent musculoskeletal examinations were "largely normal." (T. 16, 364, 370-71, 398, 480, 484, 486-91). The ALJ cited the

---

[5] Positive straight leg raise results are indicative of a herniated disc. http://www.webmd.com/back-pain/medical-history-and-physical-exam-for-a-herniated-disc.

diagnoses of chronic body pains, fibromyalgia, osteoarthritis, and peripheral neuropathy, and reviewed medical imaging which showed "only minimal osteoarthritis changes." (T. 16, 333, 348). During the hearing, the ALJ questioned plaintiff extensively about her back pain and neuropathy, and the impact those impairments have on her daily life. (T. 33-42). Plaintiff testified that her pain did not preclude her from performing a variety of daily activities, and that her pain medications helped with her symptoms. (T. 16).

The ALJ also relied upon the relevant medical opinion evidence, particularly the consultative physical exam. Dr. Ganesh found some limited range of motion in the lumbar spine, but noted that plaintiff showed poor effort during the exam. (T. 431-433). Dr. Ganesh's report also concluded that plaintiff had normal range of motion in all other joints, moved briskly, had a normal stance, and performed a full squat. (T. 16, 431).

This court concludes that the ALJ's RFC determination as it relates to spondylolysis is supported by substantial evidence. The only spondylolysis reference in the medical records described the condition as "minimal," and plaintiff offered no evidence that the condition increased in severity.[6] (T. 333). Subsequent physical exams focus most on plaintiff's fibromyalgia and diabetes, with limited references to back pain. (T. 298-302, 304-10, 478-85).

Similarly, the ALJ's assessment of plaintiff's right rotator cuff tendonitis was

---

[6] The March 27, 2009 imaging report states that "[t]here is minimal Grade I spondylolisthesis at the L5-S1 level. There is bilateral spondylolysis at the same level. Minor spurring is seen anteriorly which is most severe at the L3-L4 level. No other significant abnormalities seen." (T. 333).

supported by substantial evidence. (T. 16-18). Plaintiff argues that the decreased range of motion and pain associated with this impairment caused a more restrictive limitation on plaintiff's ability to reach than set forth in the RFC, but cites no medical evidence to support this conclusion. (Pl.'s Br. at 5). In December 2009, plaintiff was diagnosed with right rotator cuff tendonitis by her treating physician, Dr. Morrell, but he found only a "slight decrease in internal rotation." (T. 294-95). Plaintiff cites a January 2010 progress note showing "hyperactive muscle contraction rate" in the "right upper trapezius musculature", but the same note describes plaintiff as having only "moderate muscle tension" at the start of physical therapy and that her left shoulder had more pain and tension than her right. (T. 280). Plaintiff's treating physicians and medical professionals attributed other instances of shoulder pain to fibromyalgia, not tendonitis. (T. 273, 487).

The ALJ considered plaintiff's hearing testimony regarding her physical capabilities, including her shoulder and reaching ability. (T. 15-16, 42-45). He also considered the consultative exam of Dr. Ganesh, which found no gross physical limitations in plaintiff's upper extremities. (T. 432).

At best, plaintiff's complaint is premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's back and shoulder problems. In the absence of a Medical Source Statement or other comprehensive opinion by a treating physician, the ALJ chose to rely upon the medical evidence which showed these impairments were less than severe, and the consultative examination which concluded that these impairments did not impose significant limitations on plaintiff's

15

ability to perform light work. (T. 16). As stated above, it is the province of the ALJ to resolve conflicts in the evidence. *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008). In addition, the report of a consultative examiner may serve as substantial evidence upon which the ALJ may base his decision. *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, No. 13-CV–543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (Rep't-Rec.)); *Simmons v. Comm'r of Soc. Sec.*, No. 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039). Thus, the ALJ's determination that plaintiff can perform light work is supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be affirmed, and the plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 16, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge